UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TYRONE RIVERS,

                            Plaintiff,

v.                                                     Case # 12-CV-6593-FPG

                                                                DECISION AND ORDER

CORRECTIONS OFFICER PAIGE, et al.,

                            Defendants.

Plaintiff Tyrone Rivers, a former inmate of the New York State Department of Corrections and Community Services ("DOCCS"), is suing for damages based upon his 82-day confinement in the Special Housing Unit ("SHU"), and the loss of 30 days of good time credits. Defendants have moved to dismiss the Complaint, arguing that Plaintiff does not have a protected liberty interest in being free from these punishments. For the following reasons, Plaintiff's claim based upon his 82 days in the SHU is dismissed, but he may proceed at this time based upon his claim of lost good time credits.

## BACKGROUND

Plaintiff's Complaint recites many details of an alleged incident that occurred while he was confined[1] at the Elmira Correctional Facility ("Elmira"), which resulted in prison disciplinary charges being brought against Plaintiff. The details of the underlying incident are not relevant to the pending Motion to Dismiss.

---

[1] Plaintiff had been released from DOCCS custody by the time he filed this lawsuit.

What is relevant is that Plaintiff alleges that Defendant Paige, a DOCCS Corrections Officer at Elmira, refused to escort Plaintiff to the Superintendent's hearing on the disciplinary charge, and as a result, Plaintiff could not defend himself against the charges. Plaintiff further alleges that Defendant Mahunik, a DOCCS Hearing Officer at Elmira, improperly conducted the Superintendent's hearing in his absence, and that the combination of these actions resulted in Plaintiff being found guilty of the disciplinary charges at the hearing, and being sentenced to 90 days[2] confinement in the SHU, along with the loss of 30 days "good time" credit. Dkt. #1.

Plaintiff further states in his Complaint that he filed an administrative appeal regarding the outcome of the Superintendent's hearing, and the Plaintiff and Defendants agree that based upon that appeal, the disciplinary sentence was reversed. *Id.*

Prior to filing an Answer, Defendants moved to dismiss the Complaint, arguing that Plaintiff's claims do not implicate a protected liberty interest, and therefore fail to state a claim upon which relief could be granted. Dkt. #6. The Plaintiff has responded to the Motion, and Defendants have replied. Dkt. ##10, 11.

## DISCUSSION

In ruling on a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility

---

[2] Although Plaintiff was sentenced to 90 days in the SHU, he actually served 82 days in the SHU due to the reversal of his disciplinary hearing.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Because the Plaintiff is proceeding *pro se,* his pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Accordingly, Plaintiff's pleadings are interpreted "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

In *Sandin v. Connor*, 515 U.S. 472 (1985), the Supreme Court held that the Constitution did not require restrictive confinement within a prison to be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In determining whether the confinement was aytipcal or presented a significant hardship, courts primarily consider the duration and conditions of confinement. *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). In making these determinations, the Second Circuit noted that restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and to be actionable require proof of conditions more onerous than usual. *Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000). Put another way, SHU confinements of fewer than 101 days "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004). When the conditions of confinement are

uncontested by the parties, a district court may resolve the issue of atypicality of confinement as a matter of law. *Id.*

Plaintiff's pleadings are devoid of any factual allegations regarding how the SHU conditions differed from the ordinary incidents of prison life as experienced by other SHU or general population inmates at Elmira. Rather, Plaintiff's claim is based solely on the amount of time he was kept in the SHU. While Plaintiff alleges that he was confined in the SHU for 82 days, the Second Circuit has held a 101-day confinement in the SHU under normal conditions does not meet the *Sandin* standard of atypicality. As a result, Plaintiff did not have a protected liberty interest in avoiding his 82-day SHU confinement, and his claim based upon the amount of time he spent in the SHU must be dismissed. *See Sealey v. Giltner*, 197 F.3d 578, 587, 589–90 (2d Cir. 1999) (holding that plaintiff's SHU confinement of 101 days did not trigger due process protections even though plaintiff alleged that he was confined to his cell for twenty-three hours a day, limited to three showers a week, lost various privileges, and had feces thrown at him by other inmates on a few occasions); *See Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) ("SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions"); *Colon v. Howard*, 215 F.3d 227, 232 n.5 (2d Cir. 2000) ("We do not exclude the possibility that SHU confinement of less than 101 days could be shown on a record more fully developed than the one in *Sealey* to constitute an atypical and severe hardship under *Sandin*.")

The same cannot be said regarding Plaintiffs claim that he lost 30 days of good time credit. It is well settled that inmates have a liberty interest in good time credit they have already earned. *Wolff v. McDonnell*, 418 U.S. 539, 556-58, (1974). On the other hand, an inmate has no liberty interest in the opportunity to earn good time credit. *Abed v. Armstrong*, 209 F.3d 63, 66–

67 (2d Cir. 2000) (noting that good time credit is a discretionary matter and thus an inmate has no liberty interest in the opportunity to earn good time credit).

Interpreting Plaintiff's Complaint to raise its strongest arguments, I will assume that the Complaint refers to losing 30 days credit that Plaintiff had already earned. If Plaintiff did indeed lose 30 days of good time credit that was not later restored, he would have a plausible claim under *Sandin*. While Plaintiff states that his disciplinary sentence was *reversed*, he does not say that the good time credits were *restored*. In their reply papers, Defendants state that "[b]ecause his infraction was reversed, his 'good time' was restored." Dkt. #11. While presented as a factual statement, at this stage, I am generally confined to the four corners of the Complaint in determining the Motion to Dismiss, unless the matters outside the pleadings are incorporated within or integral to the Complaint. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The Complaint does not flesh out whether or not Plaintiff's good time credits were restored as a result of his sentence being reversed, and there is nothing before the Court that would allow me to conclude that the good time credits were indeed restored.

At the pleading stage, where the Court "must accept as true all of the factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572, the allegations that Plaintiff lost 30 days of good time credits suffice to raise a plausible claim, especially in light of the Supreme Court's admonition that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* If Plaintiff's good time credit was indeed restored, the Defendants may re-raise that issue through a properly supported summary judgment motion.

## CONCLUSION

Based upon the foregoing, Defendants Motion to Dismiss the Complaint (Dkt. #6) is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims based upon his 82-day confinement in the SHU are dismissed, but his claims based upon the loss of 30 days good time credits may proceed.

IT IS SO ORDERED.

DATED: March 6, 2014
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge